1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3               WESTERN DIVISION

4    THE HON. JUDGE GARY ALLEN FEESS, JUDGE PRESIDING

5

6    Christine Wolf,                    )
                                        )
7                    Plaintiff,         )
                                        )
8          vs.                          )  NO. CV-05-3535-GAF
                                        )
9    Loring Ward, et al.,               )
                                        )
10                   Defendants.        )
     _____)

11

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15              Los Angeles, California

16             Tuesday, November 6, 2006

17

18

19

20

21

22   LISA M. GONZALEZ, CSR 5920
     Official Reporter
23   Roybal Federal Building
     255 East Temple Street
24   Room 181-C
     Los Angeles, CA  90012
25   (213) 626-7199

**APPEARANCES:**

FOR THE PLAINTIFF:  ERVIN, COHEN & JESSUP LLP
                    BY:  ALLAN B. COOPER
                    9401 Wilshire Boulevard
                    9th Floor
                    Beverly Hills, California  90212-2974
                    (310) 281-6396

                    KING & SPALDING LLP
                    BY:  MARK K. GLASSER
                    1100 Louisiana
                    Suite 4000
                    Houston, Texas 77002-5213
                    (713) 751-3212

FOR THE DEFENDANTS:  KINSELLA, WEITZMAN, ISER, KUMP &
                            ALDISERT LLP
                    BY:  DALE F. KINSELLA
                    808 Wilshire Boulevard
                    3rd Floor
                    Santa Monica, California  90401
                    (310) 566-9888

1     *Los Angeles, California, Tuesday, November 6, 2006*

2                          *9:35 a.m.*

3                          *-o0o-*

4          THE CLERK:  Calling civil 05-3535, Christine Wolf

5     versus Loring Ward International.

6          Counsel, please state your appearance.

7          MR. COOPER:  Allan Cooper, Ervin, Cohen & Jessup,

8     and Mark Glasser, for plaintiff.

9          THE COURT:  Good morning.

10         MR. KINSELLA:  Good morning, Your Honor.

11    Dale Kinsella, on behalf of defendant Loring Ward.

12         THE COURT:  Good morning.

13         All right.  We're here for defense's motion for

14    summary judgment on the collateral estoppel issue in this

15    matter, which arises out of a family matter proceeding in

16    state court.

17         I spent a fair amount of time going over the

18    papers, and I found the most enlightening thing in looking

19    at the moving, opposition, and reply papers.  And on the

20    basis of my review of this file, it's my tentative to deny

21    the motion.  The motion in the state court -- that is, the

22    motion to enforce the judgment, in my view, did not raise

23    questions regarding the conduct of anyone other than

24    Mr. Wolf.  Mr. Wolf's attorneys argued that the issues

25    raised in the opposition were essentially not necessary to

1   the decision because what the Court, according to them, had

2   to find, was a writing signed by the parties, a pending

3   litigation, and then a presumption that the judgment should

4   be entered.

5          They did argue, in response to her papers, that

6   she was represented by counsel.  True enough.  She

7   understood what she was signing; that she understood the

8   effect of her signature; and that the terms of the agreement

9   are clear and unambiguous.  But that doesn't address the

10  question that's before this Court.

11         The fact that she may have understood that the

12  settlement contemplated a value to be attributed to

13  Wolf Pictures necessarily sort of brought into issue future

14  value doesn't mean that she was fully apprised of all facts

15  or all information relevant on that question.

16         The superior court's minute order is brief,

17  non-specific, and drafted in the abstract.  Largely

18  indicating again that she was represented by counsel.

19  Agreed.  That she knew about the issues of good will and

20  future profits, which are, quote, "Well known to the first

21  attorney."  No question about that.  I agree with that.  It

22  said there was no failure to disclose an asset.  Well, I

23  don't think there was any question that people understood

24  what the scope of the asset base was.  The question is what

25  was disclosed with respect to that.

1    Now -- and, by the way, this Vivendi issue, as far

2  as I'm concerned, doesn't have anything to do with what

3  we're talking about here, for a variety of reasons.

4    Now, let me just say this:  The only question for

5  determination today is is there collateral estoppel.  This

6  does not mean that I am in any way offering any opinion on

7  the merits of this case.

8    In reading the litigation in the state court,

9  there were some very good arguments made against Ms. Wolf's

10 position.  And I'm well aware of what those arguments are.

11 And I don't know how much she knows or doesn't know, and I

12 don't even know that there's ultimately going to be any

13 determination that the use, for example, of the CMM

14 materials would have any effect on the outcome of the

15 litigation here.  But is this litigation precluded as a

16 result of that, the answer to that is no.

17    So I'll hear briefly from counsel.  But, fellows,

18 I spent a lot of time with these papers, so I do know what

19 the issues are, even though I know at least half of you

20 don't agree with me.  I'm accustomed to that.

21    Mr. Kinsella.

22    MS. KINSELLA:  Your Honor, first, I notice that

23 you only made comment about the motion to enforce.  And, of

24 course, there were two opportunities that Ms. Wolf took to

25 T off on this judgment, which was her opposition to the

1   motion to enforce, as well as to set aside.

2          THE COURT:  True.  In going and looking at the

3   latter --

4          First of all, the focus here seems to me, though,

5   to have been more on the former rather than the latter.

6   Even though I understand that there's been some substantial

7   discussion with respect to the latter.  And the order that

8   seems to have been of greatest significance to counsel, and

9   maybe I've misread this, but I focused heavily on the minute

10  order of the superior court judge in ruling on the initial

11  motion, which it really seems to be the jumping off point

12  for everything else that happened after that.

13         And I think if you look at that and say, "Well,

14  what does this mean on going forward through the rest of the

15  litigation," it puts you in the same position that we are

16  here today with respect to the questions of what's left to

17  decide.  And I just think these other issues are still out

18  there for decision.

19         MR. KINSELLA:  If I may, and I'll be brief --

20         THE COURT:  Go ahead.

21         MR. KINSELLA:  -- because I understand that

22  Your Honor's looked at a substantial amount of materials

23  here.  I'd like to just step back from here for a moment and

24  discuss exactly what occurred, and when it occurred.  I

25  don't think there's any dispute but that shortly after, some

1    three weeks after this settlement agreement was signed by

2    Mr. Wolf and Ms. Wolf, she immediately made a determination

3    that there had been nondisclosure made to her.  And that to

4    me is the critical jumping off point.  The issue that she

5    presented --

6               THE COURT:  You mean after -- when the

7    September 5th report came out regarding the negotiations?

8               MR. KINSELLA:  That's correct.

9               And you have to keep in mind that what occurred in

10   the next 11 months, not like three weeks, in the next 11

11   months she had an opportunity to oppose both the motion to

12   enforce and to establish facts to prove her motion to set

13   aside.  She was seeking to set aside those on the grounds of

14   basically nondisclosure.

15              And to me the critical inquiry for the Court is

16   what occurred during that 11 months and what actually was

17   she positing before the Court.  We would all agree that what

18   she was seeking to do was to set aside the judgment on the

19   grounds of nondisclosure.  They argue it was just

20   Dick Wilson nondisclosure and nobody else's.

21              And I think the important inquiry for the Court is

22   while that may be true, I would dispute that because of the

23   various references to Assante and Loring Ward and whatnot.

24   But if that may be true, the question is were her lawyers

25   under an obligation to seek full discovery during that

1  11-month period of time on the issue of nondisclosure

2  irrespective of what the source of that may have been.

3          THE COURT:  For collateral estoppel analysis, you

4  think that's the issue?

5          MR. KINSELLA:  Well, if not, then what Ms. Wolf

6  could have done was gone in in front of the judge and move

7  to set aside the judgment on the ground of Mr. Wolf's fraud.

8  If she didn't succeed at that, she could go back a month

9  later and move to set it aside on the grounds of the

10  accountant's fraud.  If she lost that, she could go back

11  three months later and move to set it aside on the grounds

12  of the attorney's fraud.  And so on and so forth.

13          THE COURT:  But here's the thing, Mr. Kinsella.  I

14  think I understand the point that you're raising.  It seems

15  to me like your argument really goes to res judicata instead

16  of collateral estoppel.  That what you're essentially trying

17  to say is that there is, instead of issue preclusion, that

18  this should be viewed as claim preclusion.  And I don't see

19  this in this circumstance because I don't think she in any

20  way split a claim or divided a cause of action.

21          The husband's attorney wanted to enforce the

22  agreement, and they moved forward to enforce the agreement.

23  And she made a number of arguments which husband's counsel

24  dealt with, in large part, by saying -- not entirely, but in

25  large part, by saying:  "You don't need to get there because

1   look at what happened.  Look at the fact that she's

2   represented, and look at what the agreement says.  Look at

3   how clear and unambiguous it is and understand that we're

4   always, in these situations, always going to be talking

5   about future profits and good will and so forth."  The

6   problem is those questions aren't what's before me here, in

7   my judgment.  They skirt the issue as to whether or not your

8   client had any responsibility.

9          Now, don't misunderstand what I'm saying in terms

10  of the ruling and in terms of whether or not I think that

11  your clients actually have liability because I offer zero

12  opinion on that.  I will say this, and I'll say this to all

13  of the parties here.  I think you fellows understand this,

14  but I don't want to see this litigation here -- this is a

15  little digression -- I don't want to see this litigated the

16  way that case was litigated in the state because if I get

17  papers like the papers I read between Mr. Deixler's firm and

18  the firm on the other side, with all of the insults and the

19  invectives and the, in my view, unprofessional,

20  unprofessional, uncivil way of dealing with litigation, then

21  I will just make your hearings before me as unpleasant as I

22  possibly can.  And I actually think I could do a pretty good

23  job of that.

24         Look, this is an effort to figure out what

25  happened.  We're trying to understand the case and get a

1    resolution of this dispute.  There's a viable dispute, and

2    I'm here to try to help you solve that; but don't go down

3    that road.

4          MR. KINSELLA:  I'm sure when I speak on behalf of

5    Mr. Cooper without even talking to Mr. Cooper, that that

6    won't happen.  But without beating this horse much further,

7    Your Honor, and again in light of the fact that you've read

8    everything, let me leave you with this thought I raised.

9    This point about Ms. Wolf being able to, under their theory

10   of what collateral estoppel is, and being able to go each

11   and every other week set the judgment aside on the basis of

12   somebody else's fraud.  And I think if Your Honor's ruling

13   stands and we have a trial in this matter and if we are

14   successful, if Mr. Cooper came back in here two months

15   afterwards and filed an action for legal malpractice against

16   Mr. Beslow, I think -- I could be wrong -- but that you

17   would have no problem dispensing with that litigation on the

18   grounds that:  Look, you were in this courtroom, you spent

19   all this time in front of me, the issue that was teed up in

20   front of me was nondisclosure.  Am I to sit here for the

21   rest of my natural life litigating how many professionals

22   didn't disclose to Christine Wolf.

23          So if your answer to that is -- and it may not be

24   -- but if your answer to that is Mr. Cooper would not be

25   well greeted with respect to that action, what I'm

1    suggesting to you is the same thing should hold here because

2    a fair reading of what Christine Wolf was doing in the

3    superior court was saying, "I want to set this judgment

4    aside.  I don't want the judgment enforced, and the reason

5    is because I was not disclosed to.  Material facts were

6    withheld from me."

7            And if you read her papers as just limiting it to

8    her husband Dick Wolf, I don't think that necessarily is a

9    fair reading.  It is replete, and I say that word I think

10   accurately, with references to Assante Ward, with the

11   nondisclosures.  There's Mr. Beslow's declaration of what he

12   was not told.  So I guess really the issue -- if I answer

13   what was she really asking the Court to do, and she's isn't

14   asking the Court to do anything here that Mr. Cooper is

15   going to be asking the jury here, which is set it aside on

16   the grounds of fraud.

17           THE COURT:  Well, Mr. Kinsella, the fact that the

18   issues were discussed and the fact that there is reference

19   to Assante in the declaration -- and, by the way, you're

20   correct, whether it is replete or not, I don't know, but

21   it's there.  And I'm not suggesting that it's not mentioned.

22   But the same issue actually litigated and necessarily

23   decided.  Those are the three things that I have to look at,

24   which I actually think is really one thing just sort of

25   split up.  But I don't believe that they were necessarily

1    decided, and I think that's what Mr. Wolf argued in sum and

2    substance on more than one occasion and which the Superior

3    Court essentially agreed with in its ruling.

4            And, by the way, I don't know the answer to your

5    hypothetical.  I would have to think about it.  But I'm not

6    sure that they would need to bring Mr. Beslow in this case

7    to pursue a malpractice claim against him.  I don't know the

8    answer.

9            MR. KINSELLA:  All right.  Thank you, Your Honor.

10           THE COURT:  Mr. Cooper.

11           MR. COOPER:  If you think you need to hear from

12   me, I am happy to raise any concerns Mr. Kinsella may have

13   raised.  Otherwise, I'm a big fan of saving the judge's

14   time.

15           THE COURT:  I do have a question that I wanted to

16   ask both of you, which really doesn't necessarily go to the

17   issues before me but just in terms of understanding the

18   record.  The CMM organization who did the report that then

19   Assante took on and apparently incorporated into its

20   analysis, is that a report which has been disclosed to

21   everyone at this point or not?

22           Does Ms. Wolf have that report or her counsel have

23   that report?

24           MR. COOPER:  I don't believe so.  I certainly know

25   that we don't.  I don't believe so.

1          THE COURT:  Do you know, Mr. Kinsella?

2          MR. KINSELLA:  I do not know.

3          THE COURT:  Okay.  I was just curious about that.

4          All right.  I'll take the matter under submission,

5     and I'll think about what you said, Mr. Kinsella, but I

6     don't think it's going to change my thinking.

7          MR. COOPER:  If you are going to take it under

8     submission, then I would like to make a point or two.

9          THE COURT:  Okay, go ahead.  It's probably not

10     going to change anything, but --

11          MR. COOPER:  What's clear is that -- if you take a

12     look at the pleading, for example, there's a contract claim

13     by way of example, a contract alleged between Mr. Kinsella's

14     client and Ms. Wolf.  What did they agree to?  What were the

15     terms?  What did they perform?  Was there any doubt that

16     that wasn't litigated or determined in the state court

17     action?  I think Mr. Kinsella is under a misperception of

18     what this case is about, from our point of view.

19          Our point of view is it's a case that an

20     advisor -- what the Court said in the state court action --

21     it didn't say, "Oh, yeah.  Mr. Wolf, you told Ms. Wolf

22     everything."  It said, "You know, what, you had a lawyer.

23     The issues were out there, you could have investigated, you

24     didn't investigate, too bad for you."  And the question that

25     we're dealing with here include what did they do?  What was

1  their role in the transaction?  Did it affect what happened

2  there?  And there's no doubt that those weren't determined.

3  In fact, the judge said, "I didn't even consider

4  Mr. Weinberg.  I read his declaration.  I didn't even think

5  about it."

6           So I don't think this is even close.  I think your

7  tentative is right on.

8           THE COURT:  Well, I think that's what I'm saying,

9  but --

10          MR. KINSELLA:  Well, I certainly have something to

11 say, but I don't think it's going to change anything.  And

12 without further ado, can I just move to something else --

13          THE COURT:  Yeah, go ahead.

14          MR. KINSELLA:  We're a little bit of a mess here

15 in the pleading context, which is there are some defendants

16 that have not been served, there are some that have been

17 served, but there is an agreement with respect to

18 jurisdiction.  We would like to amend our answer to add some

19 additional affirmative defenses and whatever order

20 Your Honor issues --

21          THE COURT:  What I really -- first of all, why

22 don't the two of you meet and confer and see whether or not

23 you can't prepare a stip and order that establishes an

24 orderly means of dealing with these issues.  Because right

25 now you know more about the issues than I do, and you're in

1    a better position to figure that out.  And to the extent you

2    can, that's fine.

3              Now, if you get to the point where you cannot,

4    then obviously you're going to have to come before me, but

5    we're at a stage of this case where we don't have a schedule

6    yet, I don't think, do we?

7              MR. COOPER:  No.  No, actually we don't.  My

8    question is we're going to be similar to Mr. Kinsella's

9    which is, one, you want to set a scheduling conference since

10   at least two of us are here?

11             THE COURT:  Not until I get everybody served.

12             MR. COOPER:  Okay.  And then, two, I assume that

13   as part of the ruling on this motion, the stay which was

14   lifted solely for the purpose of this motion is going to be

15   lifted in its entirety and we're going to proceed with the

16   litigation?

17             THE COURT:  In all likelihood, yes, but if there

18   are all of these issues about who's served, who's not

19   served, who's going to take a jurisdiction motion, is there

20   a need to amend an answer, and so forth.  Those are all

21   things that I hope you fellows can deal with without

22   intervention.

23             MR. COOPER:  I would think so.

24             THE COURT:  Well, talk about those things.  If you

25   need me to get involved, let me know; but otherwise, I'll

1   expect to see something from you that sets forth a schedule

2   that would include a briefing schedule.

3          If there are going to be jurisdictional motions,

4   give me a briefing schedule on that.

5          MR. KINSELLA:  And the matter is submitted with my

6   hypothetical in mind?

7          THE COURT:  Yes.

8          MR. KINSELLA:  Thank you, Your Honor.

9          MR. COOPER:  Thank you, Your Honor.

10         *(Proceedings were adjourned.)*

11                          -oOo-

12                        *CERTIFICATE*

13

14         *I hereby certify that pursuant to Section 753,*

15   *Title 28, United States Code, the foregoing is a true and*

16   *correct transcript of the stenographically reported*

17   *proceedings held in the above-entitled matter and that the*

18   *transcript format is in conformance with the regulations of*

19   *the Judicial Conference of the United States.*

20

21   *Date:  February 21, 2008*

22

23

24   _____

25                        *LISA M. GONZALEZ, U.S. COURT REPORTER*
                          *CSR NO. 5920*