1  MICHAEL L. MEEKS (SBN 172000)
   CAROL A. DWYER (SBN 239769)
2  BUCHALTER NEMER, PC
   18400 Von Karman Avenue, Suite 800
3  Irvine, California 92612
   Telephone: (949) 760-1121
4  Facsimile: (949) 720-0182
   Email: mmeeks@buchalter.com
5
   Attorneys for Defendant
6  Robert Philpott

7

8              UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

| 11  Christine Wolf, | Case No. 05-CV-3535 PSG(RZx) |
| 12              Plaintiff, | |
| | Honorable Philip S. Gutierrez |
| 13       vs. | |
| 14  Loring Ward Internations LTD, f/k/a Assante Newco III, Ltd., Loring Ward Capital Management Ltd., f/k/a Assante Business Management, Inc., Assante Corporation, Martin Weinberg, and Robert Philpott, | **NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 15 | |
| 16 | |
| 17 | Date:    October 18, 2010 |
| 18          Defendants. | Time:    1:30 p.m. |
| | Crtrm:   880 (Roybal) |

19

20

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 18, 2010 at 1:30 p.m., or as soon thereafter as the matter may be heard, defendant Robert Philpott will and hereby does move in Courtroom 880 of the above-entitled court located at 255 East Temple Street, Los Angeles, California 90012, to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. This motion took place following defendant Robert Philpott's counsel's letter to plaintiff's counsel dated July 23, 2010, informing plaintiff's counsel of the basis for the motion and requesting to discuss the issues, to which no response was ever received, thus satisfying the meet and confer requirements of Local Rule 7-3.

Plaintiff agreed to withdraw allegations from her First Amended Complaint after defendants threatened a motion for sanctions under Federal Rule of Civil Procedure, Rule 11. Plaintiff's new counsel re-filed the Second Amended Complaint to provide further detail concerning jurisdictional allegations, but failed to remove the allegations that were withdrawn by agreement. Defendant Robert Philpott assumes that plaintiff's current counsel will not seek to argue allegations previously withdraw because they lacked any evidentiary support.

The Court should dismiss the entire Second Amended Complaint because it lacks sufficient allegations to establish any liability against Robert Philpott. First, Philpott is alleged to be participating in the mediation to help determine an appropriate financial dissolution for Plaintiff's divorce. Conduct of individuals involved in the dispute resolution process is immune of claims arising out of such conduct under the common law doctrine of quasi-judicial immunity. As a result, the entire Second Amended Complaint should be dismissed.

Second, the Second Amended Complaint demonstrates on its face that all of the facts and claims for relief are subject to the absolute litigation privilege. According to plaintiff, she hired Defendant Robert Philpott's employer, defendant

Assante Business Management, to provide expert advise to both her and her then-husband, Dick Wolf, concerning the assets to be divided in their immanent divorce proceeding and to act as independent mediators of the divorce. These alleged claims are all barred by litigation privilege.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support hereof; the Declaration of Michael L. Meeks in support hereof, and such other and further evidence and arguments as may be presented at the hearing on this motion.

DATED: July 29, 2010

BUCHALTER NEMER
A Professional Corporation

By: /s/ Michael L Meeks
　　　MICAHEL L. MEEKS
　　　Attorneys for Defendant
　　　Robert Philpott

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ..................................................................................................1
II. RELEVANT PROCEDURAL HISTORY AND WITH DRAWN ALLEGATIONS ....................................................................................................2
III. SUMMARY OF SAC WITHOUT ALLEGATIONS PREVIOUSLY WITHDRAWN ........................................................................................................3
IV. THE COURT SHOULD DISMISS THE SECOND AMENDED COMPLAINT AGAINST PHILPOTT ..............................................................6
    A. Philpott Is Entitled To Common Law Quasi-Judicial Immunity From Plaintiff's Claims, And The Entire SAC Should Be Dismissed ....................................................................................................7
    B. All Of The Claims In The Second Amended Complaint Against Philpot Are Barred By The Litigation Privilege ....................................9
V. CONCLUSION ....................................................................................................12

# TABLE OF AUTHORITIES

Page

**Cases**

*Flatley v. Mauro,*
  39 Cal. 4th 299 (2006). ........................................................................................10

*Howard v. Drapkin,*
  222 Cal. App. 3d 843 (1990) ........................................................................ 1, 7, 8, 9

*Johnson v. Riverside Healthcare Sys.,*
  534 F.3d 1116 (9th Cir. 2008).................................................................................6

*Kashian v. Harriman,*
  98 Cal. App. 4th 892 (2002) ..................................................................................10

*Lerette v. Dean Witter Organization, Inc.,*
  60 Cal. App. 3d 573 (1976) ...................................................................................10

*Leveto v. Lapina,*
  258 F. 3d 156 (3d Cir. 2001)....................................................................................6

*Silberg v. Anderson,*
  50 Cal. 3d 205 (1990) ............................................................................................10

*Weisbuch v. County of Los Angeles,*
  119 F. 3d 778 (9th Cir. 1997)....................................................................................6

*Wilton v. Mountain Wood Homeowners Ass'n,*
  18 Cal. App. 4th 565 (1993) ..................................................................................10

**Statutes**

Cal. Civil Code § 47(b) ................................................................................................10

Cal. Fam. Code § 310....................................................................................................12

**Rules**

Federal Rule of Civil Procedure, Rule 12(b)(6) ............................................................6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Second Amended Complaint ("SAC") fails to plead facts giving rise to any viable claim against Philpott. On its face, the SAC alleges that plaintiff Christine Wolf ("Plaintiff") hired Philpott's then-employer, Assante Business Management, along with other defendants to mediate her immanent divorce proceeding by, among other things, providing expert analysis to **both her and her husband** in an effort to resolve the financial issues in their divorce case. All of the alleged conduct of the defendants arises in the course of these services.

California law provides absolute immunity to people working as neutral third persons engaged in mediation, conciliation, evaluation or other similar dispute resolution efforts. *Howard v. Drapkin*, 222 Cal. App. 3d 843, 858-60 (1990). Courts will not engage in any fact finding to determine whether the conduct of the neutral third party was in fact neutral. Instead, the issue to be decided is whether the role that the neutral third party was intended to play was as an advocate or nonadvocate. It is clear from the SAC that Philpott's role was as a nonadvocate and the Court must therefore dismiss the case applying immunity just as it would if Philpott were acting as a judge. Accordingly, Philpott's alleged work concerning Plaintiff's divorce is absolutely immune to the claims asserted in the SAC.

In addition, California's absolute litigation privilege bars any claims against experts providing neutral analysis in the context of a divorce. In *Ramalingham v. Thompson*, 151 Cal. App. 4th 491 (2007), the litigation privilege barred claims against an accounting firm hired to provide a neutral evaluation of the spouses' community property interests. *Ramalingham* makes clear that the joint expert's analysis is privileged even if it is not communicated in a court proceeding.

Plaintiff cannot amend the SAC to avoid immunity or litigation privilege. Accordingly, the Court should dismiss the entire SAC as against Philpott with prejudice.

## II. RELEVANT PROCEDURAL HISTORY AND WITH DRAWN ALLEGATIONS

Pursuant to the Court's Order dated July 9, 2010, Plaintiff was permitted to file a Second Amended Complaint that was identical to the First Amended Complaint ("FAC"), except adding allegations concerning jurisdiction.[1] Plaintiff's SAC is essentially identical to her FAC except for the addition of jurisdictional allegations.

On February 29, 2008, Plaintiff agreed to withdraw allegations from the FAC because she admitted that they lacked any basis. Declaration of Michael Meeks ("Meeks Decl."), Ex. B. However, before Plaintiff filed an amended complaint withdrawing the allegations, the Court dismissed the FAC on April 4, 2008, finding that it lacked jurisdiction and that order was overturned on appeal.

While the new SAC fails to remove the admittedly sanctionable, frivolous allegations, Philpott assumes that Plaintiff's new counsel did not intend to rely upon allegations that were previously withdrawn. Accordingly, the following portions of the SAC have been withdrawn pursuant to Plaintiff's prior agreement (Meeks Decl., Ex. B):

Page 4, lines 12-17 beginning with "(3) concealed from . . ."

Page 8, lines 10-24 beginning with "the best-case scenario . . ."

Page 11, lines 20-24 from "Neither Assante . . ." to ". . . extant contract."

Page 21, lines 15-21, beginning with "Despite their . . ."

Page 13, lines 6-25

Page 17, lines 3-5, from "Philpott . . ." to ". . . NBC."

As indicated in Philpott's meet and confer letter concerning this motion dated July 23, 2010, Philpott believes Plaintiff has no intention of relying on these

---

[1] Philpott requests that the Court take judicial notice of the First Amended Complaint filed on May 20, 2005, which is in the Court's file.

allegations. Meeks Decl., Ex. A. Plaintiff never responded to the meet and confer letter.

### III. SUMMARY OF SAC WITHOUT ALLEGATIONS PREVIOUSLY WITHDRAWN[2]

Plaintiff describes her lawsuit against Philpott and the other defendants as follows:

> This is a case in which financial advisors and business managers, who served in that capacity for many years for Ms. Wolf and her then-husband, Dick Wolf, breached their fiduciary duty to Plaintiff, and defrauded Plaintiff, by concealing substantial assets of the community estate from her **during marital property settlement proceedings**, all for the benefit of Mr. Wolf and themselves. Ms. Wolf trusted Loring Ward, Assante, Weinberg, and Philpott to provide accurate an unbiased analysis and advice when they suggested that she rely upon them as **unbiased advisers to her and Mr. Wolf about the terms of a marital property settlement between the couple**.

(Emphasis added.) SAC ¶ 12.

Plaintiff alleges that Philpott is a CPA who acted as business manager for her and her husband beginning in 1994. She further alleges that during the time relevant to the SAC, Philpott worked as an employee of Asssante, which provided business management services to her and her husband. SAC ¶ 15.

In August 2002, Plaintiff informed her husband that she wished to end their marriage. Defendant Weinberg, chairman of Assante, suggested that he and Assante "were uniquely situated to act as both financial counselors and **neutral advisers to Mr. and Mrs. Wolf regarding the assets of the community estate**." (Emphasis added.) SAC ¶ 16.

In a mid-September 2002 telephone conversation, defendant Weinberg specifically told Plaintiff that "Assante would prepare a detailed analysis of **Mr. and Mrs. Wolf's financial positions** and that he, Assante, and Assante Business

---

[2] Philpott disputes that allegations in the SAC, and recites them herein solely for the purposes of examining them on a motion to dismiss.

3

MOTION TO DISMISS SECOND AMENDED COMPLAINT

Management would then propose a 'term sheet' for a proposed property settlement agreement between Mr. and Mrs. Wolf." (Emphasis added.) SAC ¶ 17. Defendant Weinberg informed Plaintiff that he would seek all relevant information and documents regarding the marital estate from Philpott. SAC ¶ 17.

Based upon Weinberg's representations, Plaintiff authorized Assante to analyze the Wolfs' financial condition and "then **propose terms to both parties** for a fair and equitable marital property settlement between her and her husband." (Emphasis added.) SAC ¶ 18. Wolf relied upon Weinberg, Assante and Philpott and "limited her divorce attorney's involvement in the settlement process." SAC ¶ 18.

"Shortly after accepting Weinberg's offer, Ms. Wolf was told **that Mr. Wolf has also agreed to the proposed arrangement**." (Emphasis added.) SAC ¶ 19. Weinberg never told Plaintiff that Assante would rely upon anyone chosen by Mr. Wolf's counsel to assist in preparing the "term sheet." SAC ¶ 19.

Unknown to Plaintiff, Mr. Wolf's attorney hired a forensic accounting firm to perform work in connection with Assante's analysis of the Wolfs' financial condition. Assante used that work in preparing the "term sheet," but did not disclose that fact to Plaintiff. Had she known this fact, she would have distrusted the "term sheet." Weinberg, Assante and Philpott knew that forensic accountants employed by Mr. Wolf's attorney were involved and failed to disclose this fact to Plaintiff. SAC ¶ 20.

The financial analysis presented by Weinberg, Assante and Assante Business Management as being fair and accurate was neither fair nor accurate. SAC ¶ 21. The analysis provided that Plaintiff would receive less than 50% of Mr. Wolf's earnings and profit participation rights in various television series and placed a cap on the amount she would receive. The analysis relied upon assumptions developed by Mr. Wolf's attorney and the accounts he hired all for the benefit of Mr. Wolf.

4

Plaintiff believed Weinberg when he promised to be fair, accurate, and objective and she relied upon the analysis. SAC ¶ 22.

Weinberg continued to insist that Plaintiff "not rely upon a lawyer for any purpose **related to the property settlement**." (Emphasis added.) SAC ¶ 23. "Weinberg said that the point of his, Philpott's, Assante's, and Assante Business Management's **serving as unbiased advisors during the negotiation of a marital property settlement** was to render such expenses and time-consuming activities unnecessary." (Emphasis added.) SAC ¶ 23.

The neutrality of Weinberg, Philpott, Assante and Assante Business Management was compromised. Weinberg prepared a "term sheet: which he sent to Mr. Wolf's counsel. That counsel revised the "term sheet" and sent it to Philpott for transmittal to Weinberg. Weinberg then presented the "term sheet" as if it were the work of Weinberg or Assante. Weinberg and Philpott failed to disclose the role of Mr. Wolf's lawyer. SAC ¶ 24.

The "term sheet" provided "recommendations for an **ultimate marital property settlement**." (Emphasis added.) The "term sheet" states that the recommendations contained therein were based upon Assante's and Assante Business Management's financial analysis of the parties' assets and the work of forensic accountants, but does not disclose that those forensic accountants were working for Mr. Wolf's lawyer and Mr. Wolf's interests. Plaintiff believed that the "term sheet" took into account any reasonable potential revenue Mr. Wolf might have in the future from his rights in television series. SAC ¶ 25.

Weinberg assured Plaintiff that Assante and Assante Business Management had properly investigated and accounted for Mr. Wolf's future revenues attributable to any community assets. Plaintiff trustingly adopted the "term sheet" that she believed to be the good-faith and unbiased recommendation of Assante, Assante Business Management, Weinberg and Philpott and sought minor modifications only where necessary and appropriate. SAC ¶ 26.

Plaintiff entered into a Short Form Agreement ("SFA") which was a settlement agreement on terms mirroring the "term sheet." SAC ¶ 27. Plaintiff's counsel and Mr. Wolf's counsel prepared a Marital Settlement Agreement ("MSA") based upon the SFA, which Plaintiff signed believing that she had been given good-faith, informed, and impartial recommendations by Assante, Assante Business Management, Weinberg, and Philpott. SAC ¶ 28.

Plaintiff later read newspaper articles stating that Mr. Wolf was involved in negotiations to greatly increase his income from the television shows. Plaintiff alleges that had she been properly advised by Philpott, Weinberg, Assante, and Assante Business Management, and had she therefore known that Mr. Wolf's television shows were worth more money she would never have agreed to the MSA. SAC ¶ 31.

## IV. THE COURT SHOULD DISMISS THE SECOND AMENDED COMPLAINT AGAINST PHILPOTT

A motion to dismiss pursuant to Federal Rule of Civil Procedure, Rule 12(b)(6) tests the sufficiency of the complaint based upon the facts alleged assuming that the facts are true. A complaint should be dismissed if there is either a lack of a cognizable legal theory or there is an absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008).

A court must dismiss a complaint on a Rule 12(b)(6) motion where the complaint on its face discloses some absolute defense or bar to recovery. *Weisbuch v. County of Los Angeles*, 119 F. 3d 778, 783, n. 1 (9th Cir. 1997). Where the lawsuit is brought against defendants who have statutory or common law immunity, motions to dismiss are often based upon the allegations in the complaint. *Leveto v. Lapina*, 258 F. 3d 156, 161 (3d Cir. 2001).

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

### A. Philpott Is Entitled To Common Law Quasi-Judicial Immunity From Plaintiff's Claims, And The Entire SAC Should Be Dismissed.

California recognizes the doctrine of quasi-judicial immunity which protects neutral third parties engaged in mediation, conciliation, evaluation or other similar dispute resolution efforts from any liability arising out of such efforts. *Howard v. Drapkin*, 222 Cal. App. 3d 843 (1990). The allegations in the SAC unambiguously describe the process at issue as being a dispute resolution arising out of Plaintiff's divorce and that Philpott, through his employer Assante Business Management, was providing services to resolve the divorce dispute.

The *Howard* court described the difference between quasi-judicial immunity and the litigation privilege as follows:

> We review this case in the context of both quasi-judicial immunity and statutory privilege out of a recognition that they are not coextensive. While on the facts here presented we will find that they both apply, the statutory privilege exitends to bar liability for "commicative acts" but not conduct or "noncommunicative acts." [citations omitted.] No such limitation aexists for common law quasi-judicial immunity.

*Id.* at 851, n. 2.

"The concept of judicial immunity is long-standing and absolute, with its roots in English common law. It bars civil actions against judges for acts performed in the exercise of their judicial functions and it applies to all judicial determinations, no matter how erroneous or even malicious or corrupt they may be." *Id.* at 851.

Under the concept of quasi-judicial immunity, California courts have extended absolute judicial immunity to persons other than judges if those persons act in a judicial or quasi-judicial capacity." *Id.* at 852. The *Howard* court went on to hold:

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

> The job of third parties such as mediators, conciliators, and evaluators involved impartiality and neutrality, as does that of a judge, commissioner or referee; hence there should be entitlement to the same immunity given others who function as neutrals in an attempt to resolve disputes. In a sense, those persons are similar to a judge who is handling a voluntary or mandatory settlement conference, no matter whether they are . . . or (3) privately attempting to settle disputes, such as the defendant here.
>
> We therefore hold that absolute quasi-judicial immunity is properly extended to these neutral third parties for their conduct in performing dispute resolution services which are connected to the judicial process and involve either . . . or (3) arbitration, mediation, conciliation, evaluation or other similar resolution of pending disputes.

*Id.* at 860.

The allegations of non-neutrality in the SAC are irrelevant. In order for the doctrine of immunity to be useful, the protection "must be absolute, even to the malicious or corrupt judge. The effect of judicial immunity is that the action against the judicial officer must be dismissed." *Id.* at 852. Courts do not engage in an evaluation of the conduct of the judicial officer or quasi-judicial officer. *Id.*

The proper analysis to determine whether an individual is entitled to immunity is the role in which they were place –i.e., were they supposed to be an advocate or a nonadvocate. *Id.* at 859. If they were to be a nonadvocate, then quasi-judicial immunity applies and the claims must be dismissed and go no further. *Id.*

In *Howard*, the plaintiff sued a psychologist who was hired by she and her ex-husband to perform a family evaluation of plaintiff, ex-husband and their child because the child had accused the ex-husband of physical, emotional, and sexual abuse. *Id.* at 849. The psychologist was to provide written reports only to plaintiff and ex-husband. *Id.* The plaintiff alleged that the psychologist verbally abused her, and failed to disclose a conflict of interest with plaintiff's ex-husband. *Id.* at 849-50. In addition, plaintiff alleged that the psychologist acted with the intent to

circumvent the judicial process and to cause plaintiff severe humiliation, mental anguish, and emotional distress. *Id.* at 850. Finally, plaintiff alleged that the psychologist's acts were willful, wanton, malicious, and oppressive. *Id.*

The *Howard* court held that "the psychologist who is mediating a child custody dispute, **whether by court appointment or not**, is not an advocate for either parent, even if paid by them." (Emphasis added.) *Id.* at 859. Applying the doctrine of judicial immunity, the court did not review the plaintiff's allegations that the psychologist failed to act in a neutral capacity and simply dismissed the case.

The SAC plainly alleges that the role for Philpott and the other defendants was to provide neutral advice to both Plaintiff and Mr. Wolf for purposes of settling their marital dissolution. It also describes a process of providing a recommendation to both parties and that it was intended to be basis for resolution. Philpott's intended role was not that of an advocate for either party. Accordingly, pursuant to *Howard* and the numerous cases cited therein, Philpott is entitled to quasi-judicial immunity.

All of Plaintiff's allegations after the fact about Philpott purportedly not acting neutrally are irrelevant. As the *Howard* court makes clear, people who provide dispute resolution services, like judges, are entitled to be free from claims by unhappy litigants charging malice or corruption. *Id.* at 852. Accordingly, the entire SAC against Mr. Philpott should be dismissed.

B. **All Of The Claims In The Second Amended Complaint Against Philpot Are Barred By The Litigation Privilege.**

Plaintiff alleges in her SAC that defendants were to prepare an impartial financial analysis of the Wolf's marital assets **for the benefit of both Mr. and Mrs. Wolf**, to assist them in reaching a **settlement of their marital dissolution**. Accepting Plaintiff's assertions as true, the Court must dismiss the SAC pursuant to the **absolute litigation privilege**.

The litigation privilege (Cal. Civ. Code § 47(b)) applies to statements "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve objects of the litigation; and (4) . . . have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990). Courts broadly interpret the scope of the litigation privilege <u>to encompass pre-lawsuit negotiations</u> and communications, with <u>any doubts resolved in favor of the privilege</u>. *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (2002); *Wilton v. Mountain Wood Homeowners Ass'n*, 18 Cal. App. 4th 565, 569-70 (1993)(pre-lawsuit liens protected even if no litigation is commenced); *Lerette v. Dean Witter Organization, Inc.*, 60 Cal. App. 3d 573, 580-581 (1976)(demand letter urging settlement is privileged). The litigation privilege applies to <u>all torts</u> except for malicious prosecution. *Flatley v. Mauro*, 39 Cal. 4th 299, 322 (2006).

In *Ramalingham v. Thompson*, 151 Cal. App. 4th 491 (2007), the court applied the litigation privilege in granting summary judgment to accountants hired to prepare a **report behalf of both a husband and wife** concerning their marital assets for a divorce proceeding. The accountants were to "**determine the nature and extent of the community property of the parties**" as well as "**analyze the sale of the community business, accounting for all proceeds past, present and future.**" *Id.* at 494-95. The accountants were also to "recommend a plan for equal division of community assets" and "**analyze the income and other relevant factors to assist in the determination of the spousal and child support.**" *Id.*

The wife in *Ramalingham* was unhappy with the accountants' conclusion that certain stock was not part of the community property. She filed an accounting malpractice action against the accountants. *Id.* at 496. She alleged that the accountants (1) had failed to review documentation regarding the status and ownership of the stock; and (2) had failed to analyze what was done with the proceeds of each sale of stock during the marriage. *Id.*

The *Ramalingham* court affirmed summary judgment against the wife based upon the litigation privilege. The court **distinguished** cases permitting a party to sue their own experts because **those cases did not involve** "an expert witness hired jointly by adverse parties as a neutral, dispute-resolving participant." *Id.* at 501. The court also rejected the wife's claim that the accountants' conduct was non-communicative holding:

> ... We are not convinced that the gravamen of [the wife's] claim against [the accountants] is noncommunicative conduct. It is undisputed that **[the accountant] was jointly retained by the parties to the underlying marital dissolution action to act as a neutral accounting expert for property issues**. ... [The wife] alleged that [the accountant's] work fell below the standard of care because, among other things, he based "an opinion [about the shares] upon oral statements ... without any supporting documentation.
>
> Thus, ... it was his communication of his opinion regarding the community property interest in the [stock] that allegedly caused [the wife's] damages. The gravamen of [the wife's] claim is therefore [the accountant's] communicative conduct.

(Emphasis added.) *Id.* at 503-4.

The *Ramalingham* court also held that **the purpose of the joint retention need not be to report to the court** for the litigation privilege to apply, stating:

> We are also **not** convinced ... that the litigation privilege is inapplicable unless the neutral expert was retained to resolve disputes or make recommendations to the court ... The [*Silberg*] four-part test for application of the litigation privilege ... does not include a dispute resolution requirement. ... "[T]he privilege applies broadly 'to any publication ... to achieve the objects of the litigation, **even though the publication is made outside the courtroom and no function of the court or its officers is involved**." [quoting *Silberg*, 50 Cal. 3d at 212].

(Emphasis added.) *Id.* at 504.

In about August 2002, Plaintiff informed Mr. Wolf that she wished to end their marriage. Ending a marriage in California necessarily involves a judicial

11

MOTION TO DISMISS SECOND AMENDED COMPLAINT

process of divorce or nullity. *See* Cal. Fam. Code § 310. These facts establish the first element of the litigation privilege – judicial or quasi-judicial proceedings.

Plaintiff alleges that **she and Mr. Wolf** asked defendants to prepare a neutral financial analysis of their marital property for a proposed settlement of the divorce. Under *Ramalingham, supra*, and cases cited therein, consultants performing analyses for potential litigation are within the second element of the litigation privilege.

Plaintiff further alleges that she and Mr. Wolf agreed to the joint analysis and that the analysis was used in an eventual settlement of their divorce action. These facts establish that third and fourth elements of the litigation privilege – i.e., that the analysis was done to achieve the objective of dividing community property and that it had some connection to the divorce proceeding.

Just as in *Ramalingham*, the litigation privilege applies here. Plaintiff and Mr. Wolf agreed to utilize a joint expert to assist in dividing of their community property. Based on the joint expert's report, Plaintiff entered into an agreement setting forth the terms of the division of the community property. Plaintiff now alleges that the report was inaccurate and failed to consider information that would have resulted in some different outcome. Because the litigation privilege bars every cause of action relating to the report prepared by Assante, with information provided by Philpott, the SAC should be dismissed.

## V. CONCLUSION

Philpott is entitled to quasi-judicial immunity for his alleged role in mediating or otherwise engaging in alternative dispute resolution of Plaintiff's divorce. Courts do not engage in an after-the-fact inquiry into whether a person who was intended to provide neutral services in fact acted in that manner. Instead, if the complaint shows that the intended role of the party was as a nonadvocate, the case should be dismissed under the doctrine of quasi-judicial immunity.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

12

MOTION TO DISMISS SECOND AMENDED COMPLAINT

Similarly, the litigation privilege bars the claims against Philpott. The report provided to Plaintiff which gives rise to the SAC was prepared as part of a mediation arising out of a divorce. Philpott's alleged role was as a joint expert providing recommendations to both Plaintiff and Mr. Wolf. Accordingly, the litigation privilege bars any claim concerning that report against Philpott.

These facts cannot be undone in a future pleading. The Court should dismiss the SAC as to Philpott with prejudice.

DATED: July 29, 2010

BUCHALTER NEMER
A Professional Corporation

By: /s/ Michael L Meeks
MICAHEL L. MEEKS
Attorneys for Defendant
Robert Philpott

BN 6673469v1

13

MOTION TO DISMISS SECOND AMENDED COMPLAINT